*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF MARJORIE SHEA JOHNSON.

---

RITA E. JOHNSON, Personal Representative of the
ESTATE OF MARJORIE SHEA JOHNSON,

        Appellee,

v

AMOS C. JOHNSON,

        Appellant.

UNPUBLISHED
October 19, 2023

No. 362927
Wayne Probate Court
LC No. 2021-865116-DE

---

Before: BOONSTRA, P.J., and BORRELLO and FEENEY, JJ.

PER CURIAM.

Appellant Amos C. Johnson (petitioner)[1] appeals by right the probate court's order denying his request to remove appellee, Rita E. Johnson (respondent), as personal representative of decedent Marjorie Shea Johnson's estate and to name petitioner as personal representative instead. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

On May 21, 2020, 94-year-old Marjorie Arjorie Shea Johnson, (decedent), of Canton, Michigan, passed away. Decedent was predeceased by her husband, Amos G. Johnson, and was survived by her two adult children—her biological son, petitioner, and an adopted daughter, respondent. Decedent's estate was valued at approximately $600,000 and was comprised of real properties in Michigan, Mississippi, Louisiana, and the Bahamas, as well as a vehicle and two Huntington Bank accounts.

---

[1] We refer to appellant as petitioner and appellee as respondent in this opinion in conformity with the parties' briefs and the order appealed.

In the years preceding the death of decedent, respondent lived in California and petitioner lived with decedent at her Canton home, having accrued substantial personal tax liabilities that were in arrears and having lost his own home to foreclosure. In the years preceding her death, decedent suffered from dementia to the extent she could not handle her own affairs.

After decedent's death, respondent asked petitioner whether decedent had a will on at least three separate occasions. According to respondent, each time she made an inquiry, petitioner responded that it was none of respondent's business. Respondent also contacted her deceased-father's former secretary to ask if she was aware of a will, and she referred respondent to an attorney who may have written a will; that attorney, however, did not have a copy of any will. During this time, petitioner continued to live in decedent's Canton home rent-free, despite the fact that the home was titled solely in decedent's name. When a cousin told respondent in March 2021 that petitioner was preparing to sell a home decedent owned located in Pontiac, Michigan (hereinafter, the Family home), respondent decided to file an application for informal probate.

Respondent filed that application, seeking appointment as personal representative in April 2021—11 months after decedent's death. Respondent attested therein that "decedent died intestate and after exercising reasonable diligence, I am unaware of any unrevoked testamentary instrument relating to property located in this state as defined under MCL 700.1301." Petitioner did not respond and, in May 2021, the probate court appointed respondent as personal representative and issued respondent letters of authority that authorized respondent to administer decedent's estate.

After respondent filed her application for informal probate, petitioner submitted decedent's will (the Will) to the probate court in September 2021. Petitioner attached the Will to a petition for probate and noted that the probate court was in possession of the Will. The Will named petitioner as the first named personal representative, after decedent's late husband, and respondent as the second named personal representative, after petitioner. Decedent's Will was a pour over will, leaving the residue of decedent's estate in the Johnson Family Trust (the Trust), which was allegedly created on the same date as decedent's Will. However, the Trust had been completely depleted of assets and all known assets of decedent's estate were titled in her name.

Petitioner also sought removal of respondent as personal representative and appointment of himself to that role. Petitioner argued, and continues to do so on appeal, that respondent fraudulently represented that she did not know about the Will in her application for informal probate, and petitioner should be appointed personal representative because he had the highest priority to be appointed consistent with the terms of the Will. In response, respondent contested the suitability of petitioner as personal representative, noting that petitioner failed to tell her of the Will for more than a year after decedent's death despite her inquiries, failed to account for purported Trust assets, failed to pay property taxes on estate properties, had substantial personal tax debt, and had exploited decedent's assets for his own personal gain, including using decedent's Huntington Bank account both before and after her death. Respondent also alleged that petitioner allowed his girlfriend to drive decedent's car despite the fact it was uninsured.

At the evidentiary hearing, petitioner admitted he found the Will in his father's attaché case about a month after decedent's death, but did not file it with the probate court because he believed the court already had it and he was devastated by decedent's death. Petitioner testified that he did not tell respondent about the Will because he believed she already knew there was a will and

denied respondent ever contacted him to ask about a will. In particular, according to petitioner, both he and respondent knew there was a will because petitioner, respondent, and their parents signed estate documents on May 3, 2000, at the office of their parents' attorney.

Regarding the management of decedent's assets in the nearly year after her death, petitioner testified that he operated under the false belief that, as trustee of the Johnson Family Trust, he had full control over assets of decedent's that were in her name alone. For example, petitioner said that he refused to vacate the Canton home because he believed he was authorized under the Trust to reside there rent-free after decedent's death and also that a document titled "Assignment of Furniture, Furnishings, and Personal Effects" (hereinafter, the Assignment) transferred all of decedent's properties to the Trust. Petitioner also indicated that he understood decedent's bank accounts to be "under his auspices" by operation of the Assignment. In this regard, petitioner testified that he signed documents with decedent's name, including checks after her death, because he was "carrying on her business"[2] and also that he used decedent's Huntington Bank account, which was in decedent's name only, to purchase items on Amazon after her death. Petitioner also admitted that, at the time of decedent's death, several of decedent's properties had property tax delinquencies.

Respondent testified she was not aware of decedent's Will when she filed her application for informal probate. She was not present at the lawyer's office to sign her parents' estate documents and was unaware that her parents had an estate planning attorney. In fact, respondent indicated that she was in China on May 3, 2000, the date that decedent signed the Will at an attorney's office. According to respondent, decedent later presented her only with a signature page and asked respondent to sign, which respondent did without inquiring after the nature of the document because she trusted decedent.[3] Respondent testified that decedent never told her about a will, even though respondent asked decedent about a will in 2012.

Respondent also testified regarding acts she took to administer and protect decedent's estate after becoming personal representative. For example, respondent said she paid delinquent taxes on several of decedent's properties with her own assets, thereby avoiding losing the properties to tax foreclosure. With respect to the Huntington Bank account, respondent, in July 2021, presented decedent's death certificate to the bank manager, who promptly froze the account for fraudulent activity. In September 2021, respondent changed the locks on the Family home to secure it because it had been broken into and also because, over the years, multiple people had acquired keys. And, in March 2022, respondent initiated eviction proceedings to remove petitioner

---

[2] A handwriting expert testified that checks signed with decedent's name were not the signature of decedent, but were probably signed by petitioner. Further, respondent testified that decedent would never ask anyone to sign checks for her because she was very careful and private about money.

[3] The documents with respondent's signature are a "Durable Power of Attorney for Health Care" and a "Directive to Physician Pursuant to 'Patient Advocacy Statute' " (hereinafter, "Durable Power of Attorney" and "Patient Advocacy Directive").

from the Canton home. Respondent also testified that she removed decedent's car and put it in storage because petitioner's girlfriend was driving it and it was not insured.

After the evidentiary hearing, the probate court issued a written opinion wherein it concluded that petitioner was "unsuitable to serve as personal representative according to MCL 700.3204(3), as his appointment would not be in the best interest of the decedent's estate[,] MCL 700.3611(2)(a)[,]" and respondent may remain as personal representative because insufficient grounds had been presented for her removal.

## II. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a probate court's decision whether to remove a personal representative. *In re Kramek Estate*, 268 Mich App 565, 575; 710 NW2d 753 (2005). When a probate court's decision is within the range of reasonable and principled outcomes, no abuse of discretion has occurred. *In re Baldwin Trust*, 274 Mich App 387, 397; 733 NW2d 419 (2007), aff'd and mod 480 Mich 915 (2007). The probate court's factual findings are reviewed for clear error. *Id.* at 396. "A finding is said to be clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made." *In re Erickson Estate*, 202 Mich App 329, 331; 508 NW2d 181 (1993). "The reviewing court will defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *Id.*

## III. ANALYSIS

Petitioner first argues that the probate court clearly erred by finding that "no sufficient grounds for [respondent's] removal have been presented according to MCL 700.3611." According to petitioner, record evidence establishes that respondent knew decedent had a will and lied that decedent died intestate when she filed her application for informal probate.

In Michigan, the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, governs the administration of estates. Under MCL 700.3611(1), "[a]n interested person may petition for removal of a personal representative for cause at any time." MCL 700.3611(2) enumerates multiple grounds on which a personal representative may be removed, including that the personal representative "intentionally misrepresented material facts in a proceeding leading to the appointment." MCL 700.3611(2)(b). Here, petitioner asserts that removal of respondent was proper under MCL 700.3611(2)(b) because respondent intentionally misrepresented that decedent died intestate when she sought to be appointed personal representative. As the moving party, petitioner had the burden of proof of establishing that respondent's removal was warranted by a preponderance of the evidence. See *In re Guardianship of Redd*, 321 Mich App 398, 409-411; 909 NW2d 289 (2017).

With respect to petitioner's request that respondent be removed, the probate court recognized that "the parties disagree as to the Respondent's knowledge of the Decedent's Will" and noted their conflicting testimonies. However, the court ultimately stated:

> [N]o sufficient grounds for [respondent's] removal as personal represented have been presented according to MCL 700.3611. In fact, the [respondent] asserts

without her work the remaining real estate assets in this estate would have been lost to foreclosure.

As petitioner recognizes, implicit in the probate court's conclusion is a finding that respondent did not "intentionally misrepresent material facts in a proceeding leading to her appointment." MCL 700.3611(2)(b).

Petitioner focuses on respondent's statement under oath in her application for informal probate that "decedent died intestate and after exercising reasonable diligence, I am unaware of any unrevoked testamentary instrument relating to property located in this state as defined under MCL 700.1301." According to petitioner, this statement was false and respondent committed perjury. Petitioner asserts that the record shows that respondent was present at the Will's signing on May 3, 2000, as evidenced by her signature on two other estate planning documents signed that day. Petitioner further asserts that respondent's self-serving testimony that she was in China that day is unbelievable because it was not corroborated by her passport and, further, that respondent contradicted her own testimony that there was not a will because she admitted she asked decedent about a will in 2012, and she also lied when she included the Family home address as her address on one of the estate planning documents she signed.

Petitioner's testimony supports his claim. Petitioner testified that respondent was present at the attorney's office on May 3, 2000, when decedent and her husband signed estate planning documents. The probate court, however, chose to believe respondent's testimony that she was out of the country on that date, that respondent only signed a Durable Power of Attorney and Patient Advocacy Directive when decedent presented the signature page to her at a later date, and that respondent was unaware of a will despite asking decedent about a will in 2012. And despite petitioner's argument, when respondent's testimony is read in context, no inconsistencies exist. Respondent repeatedly testified that she was unaware of a will, which is corroborated by respondent's later actions of asking petitioner about a will three times after decedent's death and inquiring with her father's secretary whether a will existed. Respondent's testimony that she asked decedent about a will in 2012 and decedent answered, "Don't worry about [it], everything is at the house," does not demonstrate that respondent knew a will existed. In fact, respondent testified with respect to this exchange, "I don't know what that means." Respondent also provided a reasonable explanation why she used the Family home address on the Durable Power of Attorney, despite that she lived at a different address—decedent asked respondent to use that address because respondent was then living out-of-wedlock with her fiancé.

Petitioner argues that respondent's claim that she was in China was "simply preposterous" and the probate court was required to "at least offer some evidentiary explanation" for the fact that respondent's signature was also on documents signed the same day as the will, pointing out that respondent's passport was never produced.[4] However, the burden of establishing that respondent should be removed as personal representative was on petitioner, not the probate court. See *In re Guardianship of Redd*, 321 Mich App at 409-411. And, as respondent points out, petitioner had

---

[4] Of note, petitioner generally argues that the probate court was required to cite to the portions of the record that underpinned its decision. We reject this claim because the authority petitioner cites does not support this contention.

the opportunity for discovery, but chose to conduct none. Petitioner also cites no law requiring respondent to corroborate her own testimony or any case which would prevent the probate court from weighing the evidence and making credibility determinations, despite a lack of any corroborating evidence, rendering petitioner's argument on this issue devoid of merit.

Petitioner next argues that nothing in the record supports the probate court's finding that he is unsuitable to serve as personal representative.

MCL 700.3203 governs the priority of persons seeking appointment as personal representative. In particular, MCL 700.3203(1) provides that "*persons who are not disqualified have priority for appointment as a general personal representative in the following order[,]*" listing first the "person with priority as determined by a probated will . . . ." (Emphasis added.) Thus, a person designated as personal representative in a will has priority to be appointed personal representative unless he or she has been disqualified. In turn, MCL 700.3204(3) states: "A person is not qualified to serve as a personal representative if the person is either under the age of 18 or is a person whom the court finds unsuitable in formal proceedings."

Respondent challenged petitioner's appointment as personal representative, alleging he is unsuitable to administer decedent's estate. See MCL 700.3203(2) (providing that "[a]n objection to the appointment of a personal representative may be made only in a formal proceeding").

While EPIC allows an interested party to object to the initial appointment of a personal representative, MCL 700.3203(2), it does not define the grounds that would support such an objection, nor does EPIC define the term "unsuitable." However, this Court has recognized that the grounds for removing a personal representative in MCL 700.3611(2) are "sufficient to support an interested person's objection to the initial appointment of a personal representative under MCL 700.3203(2)." *In re Estate of Stan*, 301 Mich App 435, 447; 839 NW2d 498 (2013). Those grounds include, that "[r]emoval is in the best interest of the estate," MCL 700.3611(2)(a), or the proposed personal representative has "[d]isregarded a court order[,]" "[b]ecame incapable of discharging the duties of office[,]" "[m]ismanaged the estate[,]" or "[f]ailed to perform a duty pertaining to the office[,]" MCL 700.3611(2)(c)(*i*)-(*iv*). Further, the party challenging suitability has the burden of establishing unsuitability by a preponderance of the evidence. *In re Guardianship of Redd*, 321 Mich App at 409-411.

Here, the probate court found that respondent sufficiently carried her burden of establishing that appointment of petitioner as personal representative would not be in the best interests of the estate. In support, the court found that petitioner failed to timely submit decedent's Will because not probating the estate allowed him to control decedent's assets. The court additionally found that petitioner wrongfully converted decedent's Huntington Bank account, misunderstood the distinction between probate and trust administration to justify his continued living in decedent's Canton home rent-fee, had a long history of personal tax problems and financial mismanagement that reflected on his ability to act as a fiduciary, and failed to pay outstanding property taxes on either the Canton home or the Family home after decedent's death.

At the evidentiary hearing, petitioner admitted that he has a long history of personal financial mismanagement (including losing his home to tax foreclosure and having outstanding personal tax liabilities), admitted he did not pay the outstanding tax liabilities on decedent's real

properties after her death, and admitted that he used decedent's Huntington Bank account to make purchases after her death under the guise that he was trustee. Petitioner also admitted he misunderstood the Trust as allowing him to stay rent-free at the Canton property and that he only submitted the Will to probate after respondent filed her application for informal probate. In short, petitioner's own testimony supported the factual findings that underpinned the probate court's decision and petitioner is simply wrong that nothing in the record supports the court's findings. See, *In re Estate of Stan*, 301 Mich App at 447.

On appeal, petitioner argues that a multitude of the probate court's factual findings are clearly erroneous. For example, petitioner asserts that the court's finding that he failed to pay property taxes on decedent's real property is erroneous because the liability existed before decedent's death. First, this argument is irrational because the tax liabilities continued while petitioner lived in the house with decedent, and continued to accrue after his mother's death while petitioner had sole control over decedent's finances. Respondent testified she paid the arrearages out of her own funds when she became personal representative 11 months later.

Further, while petitioner is correct that some of the probate court's factual findings were in error—specifically that petitioner submitted the Will to probate after commencement of eviction proceedings, failed to maintain utilities or lawn maintenance on estate properties, and failed to insure the Family home—none of these misstatements of fact require reversal. This is because a preponderance of other evidence supported the probate court's decision and, thus, any error was harmless. MCR 2.613(A) (explaining a harmless error does not require reversal). Likewise, to the extent petitioner argues that his misunderstanding of probate and trust administration, as well as his personal financial problems, were irrelevant under MCL 700.3611(2), the probate court's consideration of those factors was also harmless for the same reason.

Accordingly, having reviewed the record evidence and testimony of the witnesses, we conclude that a preponderance of the evidence supported the probate court's conclusion that petitioner is unsuitable, and thus disqualified, from serving as personal representative. It follows that the probate court did not abuse its discretion by determining that petitioner was unsuitable to serve as personal representative because his service would not be in the best interests of the estate.[5]

---

[5] Petitioner also argues that the probate court erred by refusing to impose sanctions under MCR 1.109 for respondent's allegedly false statement in her application for informal probate that decedent died intestate. Petitioner, however, did not raise this request for sanctions in a motion as required by MCR 1.109(E)(6). Accordingly, because petitioner failed to properly raise this issue before the probate court, we deem this claim waived and we do not consider it. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___NW2d___ (2023) (Docket No. 359090); slip op at 2-5.

Affirmed.  Respondent, being the prevailing party, is entitled to costs.  MCR 7.219(A).

/s/ Mark T. Boonstra
/s/ Stephen L. Borrello
/s/ Kathleen A. Feeney